Good morning. May it please the court, Jonathan Libby appearing on behalf of appellant David Dolivek. How does he say his name? I'm sorry. Dolivek. Dolivek, thanks. You know, as in United States v. Kinzon, this court explained that the computer monitoring condition that permitted the recording of all computer activity goes too far. Counsel, I thought that as a general matter there was considerable strength to your argument. We're not supposed to restrict liberty in sentencing any more than is necessary. However, we also require of trial judges that they individualize the sentences. Now, on this fellow, one way looking at his past crimes to keep him from doing anything like that again would be to say no computers for you. Another way would be no computers for you except your boss's computer at work doing what your boss says. I've seen both of those kind of conditions. In the contemporary world, it's very hard to conform to those and live a normal life. It struck me that although with an ordinary child pornography case, the condition might be excessive, particularly because of what you point out, that it could interfere with protected communications. This fellow's history, if you're going to let him use a computer, required much more extensive surveillance than is usual. He misused computers for creating child pornography and for other wrongful activities as well as for looking at dirty pictures. Why couldn't the individualization in light of this fellow's record justify the keystroke monitoring? Well, we're not suggesting that keystroke monitoring could absolutely never be imposed, and certainly it should be an individualized assessment. So you should, in fact, look at what we do know about this case now, because we're not dealing with a situation of a condition that's being imposed at the time of sentencing. This is a modification. Mr. Dollevik is already on supervised release. The decision has already been made by the probation office that he can use the Internet. They don't have a problem with that. So then the issue comes down to, okay, so if it's okay for him to use the Internet and okay for him to use a computer, then based on the facts we know now, is it in fact necessary to impose this most extreme form of monitoring in the form of essentially 24-hour surveillance of all of his computer activities? And we're not dealing with just Internet-related activities. The government makes clear that this also applies to non-Internet-related activities, his word processing. If you look at the Second Circuit's decision in Lipschitz. Oh, you're right about how aggressive it is. I mean, if he sits down and writes a poem in his diary, it's recorded and watched. Well, that's right. If he's drafting a letter to someone or drafting something in his own personal diary, you know, just putting down his thoughts and then thinks better of them and then erases it. You're absolutely right. It's already there. Or he writes down notes to talk to his doctor about. That's right. Or his lawyer. But considering his history, why not do that? Well, because I think the government has completely overstated Mr. Dalovic's computer knowledge and savvy as it is today. Is it true that he uses Wiper and Sniffer-type programs or has used them to cover his tracks on computers? According to the pre-sentence reports, in an interview we gave to a probation officer 11 1⁄2 years ago, he indicated that he had used and it wasn't clear if he had used it, but certainly was aware of Sniffer software. But, again, we're dealing with technology from 11 1⁄2 years ago. Well, part of the span in time is because he was in prison, but the point is this guy's a computer-savvy guy who not only knows how to use computers, but knows how to cover his tracks. Well, Your Honor, I don't know that he's necessarily any more computer-savvy than you or I. Okay, but that's your judgment. In the judgment of Judge Liu, this guy is and has evidenced this with using these software applications. Well, of course, Judge Liu didn't issue any findings, so it's not entirely clear what Judge Liu's thoughts were with respect to whether or not he used it. Well, sort of the proof of the pudding is in the tasting. I mean, he read what the probation department said and why and then issued this order. It's not hard to see his thought process. Well, that's right. But let's also understand that this computer monitoring agreement that was okayed, this was not something that was specifically made for Mr. Dalek. This is something that the probation office in the Central District has been imposing on all sex offenders in the district. The point of my question was I don't understand why this wouldn't be within Judge Liu's discretion, given what he was told. Well, certainly the judge has the discretion to consider this. The issue, of course, is was it an abuse of discretion to impose a condition that is so extreme. I mean, given that he's used the computer both online and offline, not just an Internet problem, it's an offline problem, given that he's used programs to cover his tracks. Well, Your Honor, I would respectfully disagree. I'm not sure that there's evidence that he's used his computer offline. Did he not have a commercial business that he used financial software on to keep track of his pornography business? There's no evidence that he, in fact, used financial software on his computer for that purpose. Did he have a commercial pornography business? He did. He did. He did have a website. As far as the records are kept someplace, I guess. I imagine so, perhaps, or it could have been done in Ledger somewhere. I don't know. Well, it could have been. But, I mean, this is, again, within the judge's discretion. This is a guy who's a computer-savvy individual. Again, based on technology from 10, 15 years ago. It's not clear that he's savvy. I'm having trouble with something. You mentioned that the probation office in that district, I don't remember what district it is, is imposing this condition in all the cases now. And, frankly, I saw the same thing as a district judge. Once they invented the penile plethysmograph, everybody was ordered to take penile plethysmographs. Well, not everyone, I would think. Well, not the female defendants. So, of course, this Court said that went too far. Yes. And I can see a real problem if a condition like that is not, like what we have in this case, is not individualized and is imposed on everyone. And your point that they're imposing it on everyone is troubling. But I can't really see why you've distinguished this case as one where it's not appropriate. I mean, it's now a whole lot easier to avoid being detected. Gosh, you don't even need all those wipers anymore. Or you can just use the Google Chrome incognito page to do your surfing or all the other programs now, they all have things where you can just click and it deletes your whole history and everything you visited and your cash. You don't need anything fancy anymore. Well, that's right. And, in fact, so the technology has. So if somebody has been in a criminal business on his using his computer, not just looking at dirty pictures, I don't really see what you can do except monitor his keystrokes to make sure he's not doing it again. Well, Your Honor, again, and I guess this goes back to what this Court said in Kinzon, you know, you don't have to go that far. There is, in fact, a search condition that has been imposed here. And there's no reason. What else could you do? I mean, a search condition, you come and search somebody's computer five minutes after he's gotten, after he's quit his Google Chrome when he was using an incognito web page  Well, no, Your Honor. I mean, there still would be some remnants of it there for that would allow some search. Nope. Well, Your Honor, then perhaps you're more computer savvy than I am or Mr. Dalovic is. And if that's the case, again, why is this what's necessary? Why is the keystroke monitoring what's necessary? Because it's the only way you can find out what he was doing with this computer. Again, Your Honor, I'm not sure that that's, in fact, the case. And if it is, then that's with respect to Internet activity, not non-Internet activity. And this, of course, extends to everything and anything that happens on his computer. All you have to do is click Secure Erase. Which is a program, Your Honor, I'm not familiar with. It's right in the word processing and Finder programs generally. I mean, it may be. But if that's the case, then Your Honor might be suggesting that keystroke monitoring is the minimum that would be necessary in any case in which monitoring might be appropriate. And I think that, in fact, would go too far. Well, the monitoring itself strikes me as inappropriate in most cases. But where a person has been using his computer to commit crimes other than just looking at dirty pictures on the Internet might be. I understand. I just don't think based on what we know about Mr. Dalovic today and his computer knowledge today that the Court had enough information to justify this form of monitoring now. Thank you, Mr. Libby. Good morning. Good morning, Your Honors. May it please the Court. Vicki Cho for the United States. I'm sure this Court has a number of questions, but I just want to clarify two things. One is that Mr. Libby suggested that this was a case where the probation officer had determined that it was fine for him to use a computer and for him to use the Internet. But to be very clear, the probation officer said that Mr. Dalovic had been found ready for monitored Internet usage. And so the – this Court has identified one of the – I think when we – when you started out, a still observation for this case was that a ban was, in fact, appropriate of all computer Internet usage. That's where it started. Counsel, help me on something here. This is a very intrusive condition. You're encouraged when you – all the things in magazines that say how to prepare to go to the doctor say go in there with notes of all the things you want to talk to the doctor about. And I would think for a sex criminal like this, some of the things that he'd want to talk to the doctor about would be his sexual thoughts, fantasies, and some of the things would be just the usual stuff people might write down, how his throat is working and his bowels are working and all this gross stuff that no one else wants to hear about. Very, very intrusive to record every key stroke. Also, he probably has a lawyer, and he probably records stuff that his lawyer told him and that he told his lawyer and that he wants to talk to his lawyer about. Super intrusive. So tell me, give me a nice, neat list of why a level of intrusiveness – I'd like you to assume it's not appropriate for every defendant – why it's appropriate for this one. A couple points on that, Your Honor. First, there is no evidence in the record other than just the defense counsel's speculation that this is something that Mr. Dolevic might want to use. Look, I hypothesized all that you're arguing with. Assume it's hypothetical. Assume that this is an extraordinarily intrusive way of finding out somebody's private thoughts and activities. Tell me what individually about this defendant – give me a list of the things that justify this extraordinarily high level of intrusiveness, assuming that it is. The main characteristic about this defendant that Your Honors have identified is that he is so computer savvy. It doesn't sound to me like he's as computer savvy as I am. And I'm by the standards of people who imagine they're computer savvy. And, oh, man, my gosh, as far as I can tell, nobody else here even knows about Google Chrome incognito pages or the secure race under Finder. Your Honor, the – That's not very savvy. A wiper program? Everybody knows about wiper programs. They're marketed. Your Honor's belief that a defendant doesn't know about this is just based on the unsworn claims of his defense counsel here. The – what we do know is what he said to the probation officer, which is that even 10 years ago he was using sniffer and wiper technology. And while the specific programs may have changed, the nature of the Internet  That's not sophisticated stuff. Can you tell me anything else about this defendant that makes it necessary to check every keystroke? Let me ask a sort of a related question. Everybody may or may not know about sniffer and wiper. But it's your contention that he actually used sniffer and wiper. Is that right? Yes, exactly. And as a result – It's not whether he knew about it. It's he had it on his computer when he was doing his child-born business. Yes, exactly. He – Don't you use sniffers and wipers if you give your computer to the Salvation Army because it's outdated and you want to wipe out all your – all your passwords and financial information? Well, the defendant's specific statement to the probation officer was that he used the sniffer programs to clean up files he has deleted and owns a wipe program that cleans up pictures he is not supposed to have. And so he was specifically using these programs to circumvent or to avoid law enforcement detection. Okay. He used wiper to secure erase pictures he wasn't supposed to have. That means to write zeros or ones or 010s in a random pattern over that part of the hard drive. What else was special about him? He also produced his own child pornography. He had his neighbor come in and when – and attempted to – That was with a video. Did he use a video camera or did he use the computer built-in camera? He used a video camera for that. But I would direct this Court to Blinkenstock and Goddard and Sodaro. In all those cases, this Court has discussed that. Hold on. I don't think you understood my question. I wasn't asking about cases. I asked you did he use a webcam on his computer or did he use a separate video camera? He used a separate video camera, but the reason why I cite these cases is because this Court's precedent is that the conditions of supervised release don't have to relate to the offense of conviction, but can anticipate crimes that a defendant convicted of a particular crime might commit in the future. And so in Blinkenstock, this Court upheld a limitation on possessing covert photography equipment, even though photography was not part of the offense. What did he do with the photographs that he – or the videos that he took? He saved all of them. Where did he save them? He just kept them in VHS. I don't know what part of the house they were in. They were VHS tapes? They were VHS tapes or were they digital? They were VHS tapes. But given today's technology and given the way that video is produced and stored now, I think it was well within the district court's discretion to find that it was – that monitoring offline conduct is necessary. Okay, he had VHS tapes of this boy masturbating on his sofa. What else did he do with his computer that justified a high level of intrusiveness? Well, beyond just the wiper and the sniffer technology, he also discussed using software to categorize the pictures that he had, which is just another example of offline conduct that – You mean organizing them like you put all your stuff about your friend Amy in a folder labeled Amy and you put all your stuff about your Social 100 class in a folder labeled Social 100? Yes, like that, Your Honor, but this was – That sophisticated? This was done through software. This wasn't just something that he was doing manually. This was done manually through making decisions about individual things, and so that's just another example. You mean like the ClariceWorks database program? I don't know what program he was using. He just mentioned it. I know about database programs. Yes, Your Honor. Is that what it was? He doesn't say that. I think he was using – the program was categorizing the pornography. The software was doing that for him. I don't think it was just a database program where he was inputting things into it. But beyond just the commercial website that he was running, he was a software – a website designer for several years beyond just the time when he was running the child pornography website or the pornography website, and I think he said that he was making $100,000 a year through that. So he was running a pornography website? Well, that was part of his offensive conviction. But in addition to that, he was also operating as a website designer, and he also – and so as a result of that, he is familiar with being an administrator. He also – they found that he was accessing the Internet through satellite and had essentially hacked the satellite, bypassing the access restrictions for the satellite to obtain it. He hacked it? I mean, I have to access the Internet over satellite because we live deep in the woods and there's no cable up there. But he bypassed access restrictions so that he could access programming that he hadn't paid for, that he wasn't entitled to. And so that's – So he hacked into a satellite? Yes. Yes, Your Honor. And let me just add that in addition to the production of the child pornography, when the victim involved in those videos would no longer comply with his requests, he threatened that victim with explosive devices in his house. And so that just goes to the nature of harm that this defendant has caused and might cause to the community in the future. And that's a relevant consideration, too, for the district court and for this court in evaluating the district court's decision, which is that the court could just ban this conduct to protect the community, or it can ensure that the probation officer knows what's happening by imposing any monitoring conditions because the potential danger to the community is so great here compared to perhaps in the average child pornography case where the individual only has child pornography on his computers or even is just limited to downloading or distributing them. What was the thing about the explosives again? He threatened the victim involved in the videos with explosive devices. These firecrackers? Yes. I think it might have been ñ let me just check, Your Honors. I think it was more than that. But the victim's family was ñ Which was it? I mean, pipe bombs or ladyfingers? Different. He exploded firecrackers under his window, but additional explosives were found in the defendant's house in addition to firearms. And the victim's family described being quite scared about all of the conduct. And so I think the district court in this case did exactly what the Ninth Circuit in King's Own instructed it to do, which was impose a monitoring condition at the time of sentencing, which then left to the discretion of the probation office to specifically implement. And in this case, I know this court, Your Honor, has expressed some concern about how this is the same condition that the probation office has imposed in many different cases. But in this specific instance, the record reflects that this was a matter of several months' negotiation. And the probation officer's letter, and I had a mistake in my brief about this, the probation officer's letter was actually written in response to the defense filing, requesting a loosing of the conditions. And so they not only specifically considered this defendant's circumstances, they considered it in light of King's Own and the Ninth Circuit's instruction to them that they only do what's least in the district's discretion.  Thank you, Your Honor. Mr. Levy? Your Honor, if you'll excuse me. Would the judge have been within his discretion to ban all computer use by Mr. Dolovic? I don't believe so under this Court's precedents and the precedents of many others. Which precedents? Which precedents specifically? Well, in Riordan, this Court upheld a ban on Internet usage, but only did so in the case that the court made very clear it was doing that only because it allowed the probation officer the right to, in fact, grant such Internet usage. So the court determined it wasn't a complete ban on Internet usage. As a result, there are several circuits. There's actually a split amongst the circuits as to whether or not an absolute ban can be imposed. About half the circuits say do we have any case that says an absolute ban cannot be imposed? In this circuit? Yes. Not – I don't believe expressly, no. No. It just simply suggested that in Riordan when comparing it to other circuits, which, in fact, has suggested maybe it could be. I wanted to clear up just a few things on the record. These were just VHS tapes that Mr. Dolovic had. They were for personal use. There's nothing to suggest it was uploaded onto the website at all. These were just VHS tapes. There's nothing in the record – I'm not sure what the government is referring to as far as Mr. Dolovic hacking into a satellite for his website. I thought I saw something in the pre-sentence report about that. What we have in the pre-sentence report was that he, in fact, did have a satellite for his Internet that he paid for. So I'm not sure what the hacking was. And these so-called explosive devices were firecrackers. That's what the PSR means. They were what? Firecrackers. Thank you, Mr. Louis and Ms. Cho. Thank you. The case just argued is submitted.
judges: Goodwin, Kleinfeld, Silverman